Potter, J.,
 

 concurring. I concur in granting a new trial but for reasons somewhat different from those given by the other members of the court.
 

 The plaintiff sues the defendant for maltreatment by one of its surgeons,
 
 i. e.
 
 the interne, while he was at the hospital. He .alleges that the defendant corporation undertook to treat him by its agents and servants, and treated him so negligently and unskilfully that he lost his arm, &c., &c.
 

 It is contended on the.- part of the defendant that it used proper care in the selection of the surgeon, which is all it is bound to do; that it undertook to provide shelter and nursing and free medical attendance, and no more; that it did not undertake to perform the duties of a surgeon, but only to place the plaintiff in charge of its surgeon ; and that on grounds of public policy, being a charitable corporation, dispensing without charge a public charity, and having no other than trust funds for the purposes of that charity, it cannot be held liable for the negligence of its unpaid servants.
 

 The arguments of counsel' have been very able, but their researches have only discovered one case nearly in point,
 
 McDonald
 
 v.
 
 The Massachusetts Hospital,
 
 120 Mass. 432.
 

 We are therefore left to settle the case on general grounds.
 

 And it seems to me that all that is requisite for the decision
 
 *434
 
 is the application of a few simple and generally acknowledged principles.
 

 That a private person, acting without compensation, is in many cases liable for negligence, is well settled. In
 
 Shiells
 
 v.
 
 Blackburne,
 
 1 H. Bla. 158, Lord Loughborough declared that “ If a man gratuitously undertakes to do a thing to the best of his skill where his situation or profession is such as to imply skill, an omission of that skill is imputable to him as gross negligence; ” and this holding, although perhaps not necessary to the decision of that particular case, has been sustained by all the decisions and text writers since. So Judge Story, Bailments, §§ 180, 182
 
 a,
 
 lays down the law to be that where the man’s situation or employment does not necessarily imply any particular skill, he-is liable only for bad faith or gross negligence, if acting gratuitously; if his situation or employment implies ordinary skill or knowledge adequate to the undertaking, he will be responsible for any injury resulting from the want of exercise of that skill or knowledge.
 

 And Dr. Wharton, after stating the cases, says that this is not only the doctrine of the common law, but was the doctrine of the old Roman law, and is that of the jurists of France and Germany of the present day. Wharton on Negligence, 2d edition, §§ 504, 640, 730. See also 1 Smith Lead. Cas. *294, *335, *337, *341.
 

 The only difference between the case of a corporation and a private citizen is, that while a private person may do the service himself, the corporation cannot itself give the medicine or the treatment, but must do it through an agent. If a person should volunteer to pay for a physician selected by the sick person himself, there could of course be no liability. If the same person should send a physician gratuitously to a sick person, provided the physician was of reputable standing, there would be no good ground for holding the sender liable for the doctor’s negligence ; but suppose he should send a quack or an ignoramus, by whose treatment the patient should be seriously injured, it might well be questioned whether he ought-to be free from liability unless the patient knew the character of the person sent and the risk he was incurring.
 

 But to go a step farther: Suppose any private person, from
 
 *435
 
 charity, undertook to furnish physicians gratuitously, and so advertised to the public, would it not be his duty to send persons of competent education and skill ? And would it not be negligence in him not to do so ? _
 

 The cases are numerous where a person who holds out to the public his readiness to perform the duties resulting from any particular trade or employment, and who, instead of doing the particular work himself, sends a servant to do it, is held liable for the incompetence of his servant, or even for the carelessness of a competent servant. It is true that in most of these cases last mentioned, the master who is held liable not only pays the servant, but he expects pay from the person for whom the work is to.be done.
 

 In the present case the services were gratuitous to the person injured, but the ageiit is indirectly compensated by the corporation;
 
 i. e.
 
 by the opportunities for acquiring skill, experience, reputation, and subsequent practice in the profession.
 

 But a corporation can act in no other way than by agents. It is the corporation acting through them. On no other principle can corporations be held liable at all. Wharton on Negligence, §§ 279, 280. If this is sound we come back to the ground before stated. It is the same case as if the corporation were itself a physician and offered to perform the service gratuitously, in which case it would be held answerable for gross negligence.
 

 If an individual, holding himself out as possessing particular skill in a particular branch of business, is so liable, even if his services are offered gratuitously, can there be any other rule for a corporation ? There is no principle of law and no analogy to justify any distinction.
 

 The fact that the corporation is a charitable one can give it no greater exemption from liability than a charitably disposed individual could claim.
 

 It is in no sense a public corporation. It has no governmental powers, no civil authority whatever. It may be, as an effective organization of charity, and as concentrating the efforts of individuals, a great public benefit. So railroads, banks, may be of public use, but still are private corporations.
 

 But it is said that it is a
 
 quasi
 
 public corporation, because its object is public charity. So may be a college ; and so may be a
 
 *436
 
 churcb corporation which opens its doors and seats freely to all people. Still they are in law private corporations and treated as such; a mere aggregation of individuals and of individual effort for the more effectual carrying out of • some particular purpose : generally, it is true, with an exemption from private liability, but with perfect liability so far as their general property,
 
 i. e.
 
 property not held under special trusts, is concerned. This exemption from private liability is indeed one of the principal reasons for resorting to acts of incorporation. But to hold such corporations exempted from corporate liability is a very different thing.
 

 And this remark, that it is a private corporation ’ and in no sense a public one, it may be well to keep in remembrance while examining some of the English cases to which we have been referred.
 

 In the case of
 
 Duncan
 
 v.
 
 Findlater,
 
 6 Cl.
 
 &
 
 Fin. 894, the defendants were trustees under a local act of parliament to build a certain road. By the language of the act the funds raised were to be applied to certain purposes and “ to no other purpose whatever,” and in reading the opinions, it is evident that the language of the act had considerable weight, although the lords do make remarks of a very general character. Here the object was a public one, and it was in the exercise of one of the ordinary powers of government.
 

 In the case of
 
 Feoffees of Heriot’s Hospital
 
 v.
 
 Ross,
 
 12 Cl.
 
 &
 
 Fin. 507, the head note lays down the rule broadly, that charity trust funds are not liable for breach of trust of the trustees. But on looking at the case we find that certain property had been given to the city of Edinburgh for the relief and education of fatherless boys, and the complaint was that the trustees had refused to admit a certain boy. This was the only question.
 

 In this and the preceding case some very strong lairguage was used by Lord Cottenham and others as to the non-liability of such corporations. And this language is strongly criticised by Lord Westbury in
 
 Mersey Docks
 
 v.
 
 Gibbs,
 
 11 H. L. 686, 732. Query, whether in the case of Heriot’s Hospital the managers ought not to have been personally liable.
 

 In the case of
 
 Mersey Docks
 
 v.
 
 Gibbs,
 
 11 H. L. 686, L. R. 1 H. L. 93, the docks corporation was created by acts of parliament
 
 *437
 
 for a public purpose, and was beld liable for the damages claimed. By § 134 of 6 Geo. IV. cap. 187, the masters,
 
 i. e.
 
 harbor masters and dock masters, were specially authorized to pay out of the rates levied under the act any damages occasioned by the negligence or misconduct of their officers and servants. The provision of itself might sustain the decision.
 

 But in all these cases the discussion takes a wide range, and although profitable for instruction, it is rather difficult to discover what principles, if .any, are settled by them. They are well reviewed in
 
 Levingston
 
 v.
 
 Guardians of the Lurgan Union,
 
 I. R. 2 C. L. 202.
 

 But it may be further contended that the corporation in this case does not offer to furnish the medical treatment directly,' but only to furnish the surgeons and the accommodations for the patients ; that this is all it engages to do; and this is the best light in which the case of the hospital can be placed.
 

 But it seems to me that in this case, as in others, it is the corporation itself which treats the patient through its officers. They do not furnish physicians, but a physician, a regular officer or employee of the corporation ; they hold him out to the public as «jtheir physician, create a confidence in him, and thus in a measure warrant his competency.
 

 In giving the opinion of the judges at the request of the lords, in
 
 Mersey Docks
 
 v.
 
 Gibbs,
 
 11 H. L. 686, 707, Blackburn, J., takes the ground that as these corporations are merely substitutes for private enterprise, there is no reason why the substituted person should not be liable, and this opinion is approved by the lord chancellor in delivering the judgment of the lords. 11 H. L. 728.
 

 If there had been several persons acting separately, each employing a portion of his property in furnishing a physician gratuitously, each would have been liable for negligence in the cases we have stated.
 

 If each one takes the same amount of property and they join together and form a corporation to carry out the same object, why should the property be exempted in one case more than in the other.
 

 The corporation is in fact a mere agency for effecting the same purpose more conveniently and economically.
 

 
 *438
 
 Railroad corporations, like others, can only act through agents. The trustees or directors exercise the powers of the corporation in appointing these agents. Generally such corporations carry passengers for pay. But sometimes by agreement, for certain purposes, and sometimes by favoritism, passengers are carried free. In the first case there may be said to be a consideration or something equivalent to pay. But if the passenger is carried for no consideration whatever the rule is the same.
 

 It might as well be argued in tbe case of such free passengers, and even in the case of paying passengers, that the corporation merely agrees to furnish proper cars and proper officers to run them, and that if it does this it is not liable.
 

 But these corporations are held liable by the policy of the law, as common carriers, and because it is considered absolutely necessary for public safety. The lives and property of the passengers are intrusted to them and are under their control. And so here : the limbs and lives of patients are intrusted to the corporation, and although it acts gratuitously, it should for public [safety be held to the strictest responsibility.
 

 The railroad company is bound to exercise proper care and is held liable for want of it. And there seems to be a stronger reason for the application of the principle in the present case, because, although it may be the habit of railroad officials to give their friends free passages, that is not the business for which the corporation was formed ; whereas in the present case gratuitous treatment is one of the most important objects, almost the principal object, for which the defendant corporation was created.
 

 It is enough that confidence is tendered and accepted. That is a sufficient consideration ; and the fact that the service is rendered gratuitously is immaterial. “ The confidence induced by undertaking any service for another is a sufficient legal consideration to create a duty in the performance of it,” said Grier, J., citing
 
 Coggs
 
 v. Bernard, and 1 Smith Lead. Cas. *95 ;
 
 Philadelphia Reading Railroad
 
 v. Derby, 14 How. U. S. 468, 485; Wharton on Negligence, §§ 640, 641. The remarks of the last cited author in § 487 and the authorities there cited apply. If a person undertakes to do an act or discharge a duty by which the conduct of others may properly be governed, he is bound to do it in such a manner that those who act upon the faith of it
 
 *439
 
 shall not suffer from his negligence ; and this even if there was in the beginning no consideration for the promise.
 

 The only safe ground, therefore, is to hold that the corporation is itself present, acting in and through its officer selected for the particular purpose, and is therefore liable to the same extent he would be himself; and in this case we have already stated the rule which governs the liability.
 

 Is it not better and safer for the court to follow out the analogies of the law, and then if the legislature is of opinion that public policy demands a limitation of this liability, it is in its power to interfere and grant an entire or a partial exemption.
 

 Petition grcMed.
 

 Note. — TIxe case was subsequently settled by the defendant.